IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MIGUEL A. MORAN, | ) | CASE NO. 1:14CV184 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| KIMBERLY CLIPPER, *Warden*, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Miguel A. Moran, ("Petitioner" or "Moran") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Moran is detained at the Lorain Correctional Institution, having been convicted by a Lorain County, Ohio, Court of Common Pleas, jury of one count each of rape, aggravated burglary, domestic violence, and aggravated trespass. Doc. 10-1, p. 7.[1] *State v. Moran*, Case No. 10CR080887 (Lorain Cty. Common Pleas Ct. filed May 12, 2011). On May 12, 2011, the court sentenced Moran to six years on the rape count, three years on the aggravated burglary count, and ten months on the domestic violence count, the aggravated burglary sentence and the domestic violence sentence to be served concurrently but consecutively to the rape count, for an aggregate sentence of nine years in prison. Doc. 10-1, pp. 7-8.

On January 28, 2014, Moran filed his petition for writ of habeas corpus setting forth four grounds for relief. Doc. 1, pp. 2-4. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Moran's petition is barred by the statute of limitations. Thus, the undersigned

---

[1] Doc. page citations are to ECF Doc. page numbers.

1

recommends that Respondent's Motion to Dismiss (Doc. 10) be **GRANTED** and that Moran's petition for writ of habeas corpus (Doc. 1) be **DISMISSED**.

### I. Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2878 (20)09). The Lorain County Court of Appeals, Ninth Appellate District of Ohio, set forth the facts as follows:[2]

> {¶ 2} J.R. burst into her neighbor's apartment and asked to use her phone to call the police. Officer Efrain Torres arrived on the scene and observed that the window on the rear door to J.R.'s apartment had been broken. Officer Torres spoke with J.R., and she told him that her ex-boyfriend, Mr. Moran, had broken into her apartment and physically assaulted her. When Officer Torres asked if she had been sexually assaulted, J.R. cried and did not answer. When speaking to Detective Dennis Moskal days after the incident, J.R. denied being sexually assaulted. A preliminary hearing was held a few weeks later. At that hearing, J.R. testified under oath and, for the first time, said that Mr. Moran had raped her.
>
> {¶ 7} J.R. testified that she had dated Mr. Moran for approximately three years and that they had lived together for a time. However, at the time of incident, they were no longer dating. On the morning of the incident, Mr. Moran woke J.R. by pounding on the door of her apartment. According to J.R., Mr. Moran claimed that he needed his birth certificate and social security card for an interview.
>
> {¶ 8} J.R. testified that she was scared and told Mr. Moran that his items were in her car, not her apartment. According to J.R., she told Mr. Moran that, if he drove his car a distance away from her home, she would go to her car, get his things, and put them at the back door for him to pick up. J.R. testified that she asked Mr. Moran to do this because she did not trust him. Mr. Moran drove away, and J.R. went outside to her car.
>
> {¶ 9} According to J.R., while she was getting Mr. Moran's things from her car, Mr. Moran drove past her. She ran into her apartment and shut the door, but Mr. Moran broke

---

[2] The facts are taken from the Ninth District Court of Appeals' decision *State v. Moran*, No. 11CA010011 (Ohio Ct. App. May 21, 2012); 2012 WL 1820868 (Ohio Ct. App. May 21, 2012). Moran has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

the glass with his elbow. When J.R. saw that Mr. Moran was going to unlock the door, she ran to try to get out the front door. Before she could reach the front door, however, Mr. Moran caught her from behind and pushed her onto her sofa.

{¶ 10} J.R. testified that, after Mr. Moran pushed her onto the sofa, he began to threaten her, saying that he had heard she had been with another man and that he was going to hit her. J.R. urinated on herself because she was so frightened. She told Mr. Moran that she had not been having sex with anyone, but he remained angry. He told her to go upstairs and take a shower. She said she did not want to, but he told her to go upstairs and pushed her towards the stairs. When she resisted, he threw her against a wall.

{¶ 11} According to J.R., Mr. Moran pushed her upstairs and into the bathroom. J.R. shut the bathroom door and pretended to take a shower. When she opened the door, she saw Mr. Moran looking around in a room. He saw that she still had her clothes on and told her to get in the shower. He also told her to leave the bathroom door open.

{¶ 12} J.R. got in the shower, and Mr. Moran joined her. Mr. Moran ran his hands over her back and buttocks. According to J.R., she cried throughout the shower. Eventually, Mr. Moran told J.R. to go into her bedroom. She said no, and he yelled at her to go in the bedroom. J.R. threatened to scream and alert her sister-in-law who lived next door. However, Mr. Moran responded that J.R.'s sister-in-law was not home and that he had already closed J.R.'s bedroom window.

{¶ 13} J.R. testified that she looked at her purse, which contained mace, but Mr. Moran saw her and knocked the purse over. She tried to run out her bedroom door, but Mr. Moran slammed it shut. J.R. then tried to get around the bed, pleading with Mr. Moran, "[P]lease * * * don't do this." Mr. Moran grabbed her, put her in her bed, and asked again if she had had sex with any one. While Mr. Moran asked her that, he was grabbing J.R.'s jaw.

{¶ 14} J.R. denied having sex with anyone, and Mr. Moran told her that "he was going to check." Mr. Moran took some lubricant from J.R.'s vanity cabinet, put it on his finger, and inserted his finger into her vagina. Mr. Moran then penetrated J.R. with his penis. J.R. testified that she "kept telling [Mr. Moran] no, crying, begging, whatever." Eventually, Mr. Moran got up, and J.R. saw blood and semen on the towel that she was laying on.

{¶ 15} Mr. Moran asked J.R. where her phone was, saying that he wanted to go through her phone and that, if he found a man's name, he was going to hurt her. J.R. told Mr. Moran that her phone was in the next room and, when he left to go look, she grabbed her phone and took out the battery. When Mr. Moran returned, she gave him the phone and told him that the battery was dead. Mr. Moran said he had a charger in his car and left to go get it. J.R. testified that she went in the bathroom and cleaned her vagina. She also got dressed. Mr. Moran returned with a charger and plugged J.R.'s phone in. J.R. took the opportunity to run out her back door and into the home of her neighbor Barbara Pitts.

> {¶ 16} J.R. asked to call the police, which Ms. Pitts allowed her to do. While J.R. was on the phone with the police, she saw Mr. Moran slowly drive past the front of Ms. Pitts' home. The police eventually came, and J.R. told the officers that Mr. Moran had broken into her home and had pushed her around. She did not tell them that he had sexually assaulted her because she was "embarrassed." She also did not want her brother to learn of the assault because she feared he would retaliate against Mr. Moran, getting in trouble as a result.

*State v. Moran*, 2012 WL 1820868, at *1, 3 (Ohio Ct. App. May 21, 2012).

## II. Procedural Background

### A. State Action

On July 29, 2010, a Lorain County Grand Jury issued an indictment charging Moran with one count of rape, O.R.C. § 2907.02(A)(2), one count of aggravated burglary, O.R.C. § 2911.11(A)(1), one count of domestic violence, O.R.C. § 2919.25(A), and one count of aggravated trespass, O.R.C. § 2911.211(A). Doc. 10-1, pp. 3-4. Moran pled not guilty to the charges. Doc. 10-1, p. 7.

During the jury trial, Moran filed two motions for judgment of acquittal pursuant to Crim. Rule 29 and moved for a mistrial, all of which the trial court denied. Doc. 10-1, pp. 5-6. The jury found Moran guilty on all counts. Doc. 10-1, p. 7. On May 11, 2012, the trial court sentenced Moran to a total of nine years in prison, to be served concurrently with a prior sentence, and classified him as a Tier III sex offender. Doc. 10-1, p. 8, 9.

### B. Motion for New Trial

On May 27, 2011, Moran, through counsel, filed a motion for a new trial based on (1) alleged misconduct of the prosecuting attorney and a witness for the state and (2) insufficient evidence to sustain the verdict. Doc. 10-1, p. 11. On August 17, 2011, the trial court denied Moran's motion. Doc. 10-1, p. 24.

### C. Direct Appeal

4

On June 3, 2011, Moran, through new counsel, timely appealed to the Ninth District Court of Appeals.  Doc. 10-1, p. 25.  In his brief, Moran raised the following assignments of error:

> 1. The trial court erred to the detriment of Appellant when it ruled against Appellant's motion for acquittal as the evidence was insufficient to sustain a conviction.
>
> 2. The jury lost its way when finding Appellant guilty of the charges in the case at bar as the quality of the evidence did not meet the burden of proof and the jury did not consider the weight of the evidence and therefore the verdict was against the manifest weight of the evidence.
>
> 3. The trial court erred to the detriment of Appellant in denying Appellant's motion for mistrial.
>
> 4. The trial court erred to the detriment of Appellant by allowing witnesses to testify that they believed the testimony of the victim and further that they knew the witness had been sexually assaulted at the time she gave her initial report even though she had not told police that she had been sexually assaulted.

Doc. 10-1, p. 30.  On May 21, 2012, the state Court of Appeals overruled Moran's assignments of error and affirmed the judgment of the trial court.  Doc. 10-1, p. 90.

### D.  Delayed Appeal to the Ohio Supreme Court

On December 30, 2013, Moran, proceeding *pro se*, filed a notice of appeal and a motion for leave to file a delayed appeal with the Ohio Supreme Court.  Doc. 10-1, pP. 92, 95.  On February 19, 2014, the Ohio Supreme Court denied Moran's motion for a delayed appeal and dismissed his case.  Doc. 10-1, p. 116.

### E. Federal Habeas Petition

On January 28, 2014, Moran, *pro se*, filed a petition for a writ of habeas corpus.  Doc. 1. He listed the following grounds for relief:

> **Ground One:** Actual Innocence
>
> > **Supporting Facts**: Discrepancies in evidence and testimonies. Clearly indicates Potitions [sic] innocence.

5

**Ground Two**: The Trial court erred to the detriment of Appellant when it ruled against Appellant's motion for acquittal as the evidence was insufficient to sustain a conviction.

**Supporting Facts**: The state[] failed to present sufficient evidence that would support a conviction for rape.

**Ground Three**: The trial court erred to the Detriment of Appellant in denying Appellant's motion for mistrial.

**Supporting Facts**: Several [of] the alleged victim's statements during her testimonies were so prejudicial (And contained so many Inconsistencies) That the Trial Court should have Declared a mistrial.

**Ground Four**: The Trial Court erred to the detriment of Appellant by allowing witnesses to testify that they believed the testimony of the alleged victim and further that they knew the witness had been sexually assaulted at the time she gave her initial report even though she had not told police that she had not been sexually assaulted.

**Supporting Facts**: The Trial Court committed plain error when it allowed certain testimony from Offices Torres and Detective Moskal that impermissibly bolstered the credibility of the alleged victim.

Doc. 1, pp. 2-4.  On September 10, 2014, Respondent filed a Motion to Dismiss.  Doc. 10. Respondent argues that Moran's petition is barred by the statute of limitations and that all his claims have been procedurally defaulted.  Doc. 10, pp. 7-14.  Moran did not file a responsive brief.

## III. Law & Analysis

### A. AEDPA Statute of Limitations

Respondent contends that Moran's habeas petition is barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d).  The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus and provides, in relevant part:

6

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]

28 U.S.C. § 2244(d). "Direct review" includes the 90-day period a petitioner has for seeking *certiorari* in the United States Supreme Court. *Knuckles v. Brigano*, 70 Fed. App'x 830, 838 (6th Cir. 2003) (citing *Penry v. Lynaugh*, 492 U.S. 302, 314 (1989)). Thus, a case becomes final on direct review when *certiorari* is denied or the time to file a *certiorari* petition expires. *Id*.

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003) (citing 28 U.S.C. § 2244(d)(2)). This statutory tolling provision, however, does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted).

"An application for post-conviction or other collateral review is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, e.g., requirements concerning the form of the document, the court and office in which it must be lodged, payment of a filing fee, and applicable time limits upon its delivery." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (citing *Artuz v. Bennett*, 531 U.S. 4, 8-10 (2000)). A post-conviction petition deemed untimely pursuant to Ohio law is not "properly filed" and, therefore, does not toll the statute of limitations. *Id*. at 771-772.

**B. Moran's Petition is Barred by the One-Year Statute of Limitations**

The one-year statute of limitations began to run when Moran's conviction became final. 28 U.S.C. § 2244(d)(1)(A). The Ohio Court of Appeals affirmed the judgment of the trial court on May 21, 2012. Doc. 10-1, p. 76. Thereafter, Moran had forty-five days, until July 5, 2012, to file a notice of appeal to the Ohio Supreme Court. *See* Rule 7.01(A)(1)(a) of the Rules of Practice of the Supreme Court of Ohio ("a notice of appeal in the Supreme Court [must be filed] within forty-five days from the entry of judgment being appealed."). Moran did not file a notice of appeal to the Ohio Supreme Court. Therefore, absent the application of any tolling provisions, Moran had one year from that date, until July 5, 2013, to file his federal habeas petition. Moran filed his federal habeas petition more than a year and a half later, on January 28, 2014, well over the statutory period for filing a federal habeas petition.

Although Moran filed a delayed appeal to the Ohio Supreme Court on December 30, 2013, that filing did not toll the statute of limitations because it was filed after the limitations period had already expired. *See Vroman*, 346 F.3d at 602 (upon the expiration of the limitations period, a state collateral petition will not toll the statute of limitations per 28 U.S.C. § 2244(d)(2)).

Moran does not contend that his petition is timely under 28 U.S.C. § 2244(d)(1)(A). Nor does he argue that any other provision in 28 U.S.C. § 2244(d)(1) controls the start of the statute of limitations in this case. Accordingly, the undersigned recommends that Moran's petition be dismissed as time-barred.

## IV. Conclusion and Recommendation

For the reasons stated above, the undersigned concludes that Petitioner's habeas petition is barred by the one-year statute of limitations. Accordingly, the undersigned recommends that the Court **GRANT** Respondent's Motion to Dismiss (Doc. 10) and **DISMISS** with prejudice Moran's Petition (Doc. 1).

Dated: March 20, 2015

Kathleen B. Burke
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).